IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00303-PAB-SKC

DELMART E.J.M. VREELAND, II,

    Plaintiff,

v.

ROBERT CHARLES HUSS,

    Defendant.

# ORDER

This matter is before the Court on Defendant Robert Charles Huss' Motion to Dismiss [Docket No. 36] and Plaintiff Delmart E.J.M. Vreeland, II's Motion for Leave to File Amended Complaint [Docket No. 53]. The Court has jurisdiction pursuant to 28 U.S.C. § 1343.

## I. BACKGROUND & PROCEDURAL HISTORY

### A. Background

The allegations in plaintiff's Amended Prisoner Complaint [Docket No. 32] are to be taken as true in considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

This matter arises out of defendant Robert Huss' ("Huss") alleged conduct after a settlement conference in *Vreeland v. Tiona, et al*, 17-cv-01580-PAB-SKC ("*Tiona*"). Docket No. 32 at 14. At all relevant times, Huss was an attorney with the Colorado

Attorney General's Office. He represented a defendant in another of plaintiff's federal court matters, as described more fully below.

Plaintiff is a state prisoner currently in custody of the Colorado Department of Corrections ("CDOC") at a level three security prison. Docket No. 32 at 5, 10-12. He was placed into CDOC custody in October 2008 on "sexually related" convictions, with what plaintiff describes as a sentence of 24 years to life as well as "a 48 year sentence which CDOC uses to control and set [parole eligibility dates] and [mandatory release dates]." *Id.* at 10.

Plaintiff received an offense-specific evaluation ("OSE") that contained errors. *Id.* at 11. The CDOC relied upon the erroneous OSE when classifying plaintiff as an S-5-I inmate ("S Code"). *Id.* As a result, he is ineligible for transfer to lower level facilities, and he is unable to participate in statutorily-mandated sex-offender-treatment programs (or other CDOC programs) without a file review. *Id.* Moreover, his S Code classification subjects him to automatic "denials of community corrections and a denial of parole, and the incarceration in CDOC for approximately five years beyond [his parole eligibility date]." *Id.* Plaintiff alleges that these consequences of his erroneous CDOC classification are illegal. *Id.*

During his incarceration, plaintiff received the assistance of a CDOC inspector general officer ("IGO") to correct plaintiff's S Code classification "so Plaintiff could be moved to a lower level facility . . . and enter the CDOC 'Flagger Program' ([a program that] gives inmates a certificate to work for State departments of transportation as a road flagger and pays about $19.00 an hour to start)." *Id.* at 12-13. Plaintiff was later

informed by the IGO's supervisor that plaintiff would have to pay for a new OSE and, based on the results of that OSE, his S Code classification might be lowered. *Id.*

Magistrate Judge Kathleen M. Tafoya set a telephonic settlement conference in *Tiona* for January 16, 2018. *Id.* at 14. Plaintiff, the IGO who was assisting plaintiff to change his S Code classification, Assistant Colorado Attorney General Kristin Ruiz ("Ruiz") (appearing for defendant in *Tiona*), and Huss (who was not an attorney of record in *Tiona*) were on the phone conference. *Id.* During the conference, plaintiff offered to dismiss his claims against all CDOC defendants in *Tiona* and other matters plaintiff brought against the CDOC if Ruiz would help speed up his "[S Code] change and transfer" to a lower level facility. *Id.* Plaintiff's offer to settle did not extend to his claims in *Vreeland v. Schwartz*, No. 13-cv-03515-PAB-KMT ("*Schwartz*"), a matter in which the defendants were represented by Huss. *See id.* Ruiz informed plaintiff that she would pass along the offer to her client, the CDOC. *Id.* Huss never spoke during the settlement conference. *Id.*

Three days later, a "source employed by the CDOC" informed plaintiff that Huss sent emails and made phone calls to interfere with plaintiff's S Code change, facility transfer, and "to have Plaintiff moved out of state" in retaliation for plaintiff's unwillingness to settle *Schwartz*. *Id.* at 15. Within days, the inspector general's office informed plaintiff that he would not be granted an S Code change, a parole eligibility and mandatory release date "waiver," a transfer to lower level facilities, admission to community corrections by 2021, or parole in 2023. *Id.* Plaintiff then filed this case. *See* Docket No. 1.

3

Since filing this case, plaintiff claims that his investigation has resulted in the discovery of additional facts supporting multiple conspiracies to deprive him of his First Amendment right to be free from retaliation, his Sixth Amendment right to counsel, and instances of neglect to prevent conspiracies by three additional attorneys at the Colorado Attorney General's Office -- Jennifer Huss, Ruiz, and Julie Tolleson -- and the CDOC Inspector General, Jay Kirby. *Id.* Plaintiff obtained the majority of this evidence from Huss' testimony in a July 31, 2018 hearing in *Tiona*. *See* Docket No. 53 at 1, ¶ 2. Plaintiff alleges that, during the July 31 hearing, Huss testified "that he withheld information and/or evidence from the Court and Plaintiff in order to prevent Plaintiff from filing suit against another party," that party being Jennifer Huss, Huss' wife. *Id.* (referring to testimony transcribed at Docket No. 42-1 at 28).

**B.     Procedural History**

Plaintiff filed his Prisoner Complaint [Docket No. 1] on February 7, 2018, against Huss in his individual and official capacities asserting a First Amendment retaliation claim and a claim for deprivation of access to court. Docket No. 1 at 4-14. Judge Lewis T. Babcock dismissed plaintiff's official capacity claims for damages and drew the case to this Court and Magistrate Judge Kathleen M. Tafoya. *See* Docket No. 5.

On April 26, 2018, plaintiff filed a motion seeking to exceed the thirty-page limitation for his amended prisoner complaint pursuant to Fed. R. Civ. P. 15(a)(1). Docket No. 12 at 1. He sought to amend his complaint to add four due process claims against six new defendants, amend the factual allegations contained in his retaliation claim against Huss, and add a new claim against Huss, "One Unknown Attorney" and

4

the Colorado Attorney General for "conspiracy to deprive another of constitutional rights" under the First and Fourteenth Amendments.[1]  Docket No. 12-1.  After the defendants moved to dismiss the Amended Complaint, the Court adopted Magistrate Judge Tafoya's recommendation [Docket No. 27] and dismissed all claims, without prejudice, except plaintiff's First Amended retaliation claim against Huss.  Docket No. 31 at 2-3.  On September 10, 2018, Huss filed a Motion to Dismiss [Docket No. 36] seeking dismissal of the only remaining claim against him.  On July 1, 2019, plaintiff filed a Motion for Leave to Amend Complaint [Docket No. 53].

## II. STANDARDS OF REVIEW

### A. Motion for Leave to Amend Complaint

Plaintiff seeks leave to file the proposed second amended complaint pursuant to Fed. R. Civ. P. 15(a), which states that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Rule 15 instructs courts to "freely give leave [to amend] when justice so requires."  *Id.*  Nevertheless, denying leave to amend is justified if the proposed amendments are unduly delayed, unduly prejudicial, futile, or sought in bad faith.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). The "most important[] factor in deciding a motion to amend the pleadings[] is whether the amendment would prejudice the nonmoving party."  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006).  As a general rule, the Court retains the discretion to

---

[1] Plaintiff withdrew his original claim alleging a deprivation of court access.  *See* Docket No. 12-1.

permit such amendments. *Id.* at 1204. The Court must delineate its rationale if it refuses leave to amend. *Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987).

**B.     Motion to Dismiss**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown -- that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting Twombly, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted).

## III. ANALYSIS

The filing of an amended complaint moots any motions to dismiss aimed at a now-inoperative pleading. *See Gotfredson v. Larsen LP*, 432 F. Supp. 2d 1163, 1172 (D. Colo. 2006); *see also Strich v. United States*, No. 09-cv-01913-REB-KLM, 2010 WL 148269, at *1 (D. Colo. Jan. 11, 2010) ("The filing of an amended complaint moots a motion to dismiss directed at the complaint that is supplanted and superseded."). Accordingly, the Court first addresses the Motion for Leave to Amend.

### A. Motion for Leave to Amend

In his proposed Second Amended Prisoner Complaint [Docket No. 53-1], plaintiff seeks to bring four claims asserted against Huss and Assistant Colorado Attorney Generals Jennifer Huss, Kristin Ruiz ("Ruiz"), and Julie Tolleson ("Tolleson"), as well as Jay Kirby ("Kirby"), the CDOC Inspector General. In support of his motion, he argues that: (1) failing to amend would subject his new claims to the statute of limitations, Docket No. 53 at 3, ¶¶ 12-13, 18; (2) the amended complaint will not cause delay or harm to any party, *id.* ¶¶ 17, 19; and (3) the amended complaint is not sought for purposes of delay, frustration, or harassment of any party. *Id.* ¶ 19. Huss argues that plaintiff's proposed amendments are made in bad faith "to make Defendants' former and present counsel parties to the case to relitigate the allegations made in Plaintiff's motion alleging attorney misconduct [in a separate matter], which the Court has already

resolved[,]" and would not "survive a motion to dismiss and thus, the claims are futile." Docket No. 60 at 4-5.[2]

### 1. Claim One – First Amendment

In Claim One, plaintiff seeks to amend the factual allegations contained in his First Amendment retaliation claim. Plaintiff's First Amendment claim is based on two theories. First, plaintiff contends that Huss retaliated against him for not agreeing to settle *Schwartz* by attempting to (1) prevent a settlement in *Tiona* and (2) prevent an "in progress lower level facility transfer," and that Kirby, Ruiz, Jennifer Huss, and Allen went along with Huss's actions. Docket No. 53-1 at 15-16. Second, plaintiff alleges that defendants impeded his access to courts by retaliating against him, making false testimony, and falsely asserting attorney-client privilege. *Id.* at 16-17.

#### a. Retaliation

"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018). The elements necessary for a retaliation claim where the governmental defendant is not the plaintiff's employer nor a party to a contract with the plaintiff are: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage

---

[2] On August 7, 2019, plaintiff filed a Motion to Sanction Attorney William Allen for Lies to Court [Docket No. 62]. Broadly, plaintiff alleges that defense counsel made misrepresentations to the Court in the response to the motion for leave to amend. Docket No. 62 at 1-2. The Court does not rely on the alleged misrepresentations in resolving the motion for leave to amend.

in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotations omitted). In the prison context, "a plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (quotations omitted).

The proposed second amended complaint states a claim for retaliation against Huss only. Plaintiff's pursuit of litigation – exercising his right of access to the courts -- is a constitutionally protected activity. *See Requena*, 893 F.3d at 1211; *see also Miskovsky v. Jones*, 437 F. App'x 707, 713 (10th Cir. 2011) (unpublished) (first element of retaliation claim satisfied by plaintiff "filing pleadings in federal court"). The complaint alleges that Huss's communication with Kirby caused plaintiff to suffer an injury – losing a "lower level facility transfer" which was "in progress." *See* Docket No. 53-1 at 15; *Peterson*, 149 F.3d at 1144 (retaliation claim requires plaintiff to allege that the injury would not have taken place but for the retaliatory motive). However, the allegation that Huss, Ruiz, and Kirby told CDOC officials to stop "assistance" to plaintiff is conclusory, as it is not supported by any factual allegations in the proposed second amended complaint. Similarly, the allegation that Ruiz, Jennifer Huss, and Allen, by "going along" with preventing the lower level facility transfer, retaliated against plaintiff is not supported by any factual allegations. Finally, the complaint alleges that Huss's actions were substantially motivated by plaintiff's refusal to settle *Schwartz*. *See* Docket No. 53-1 at 15. However, the complaint lacks any allegation that Kirby's conduct was

9

substantially motivated by plaintiff's refusal to settle *Schwartz*; rather, the complaint alleges solely that Kirby "agreed" to prevent plaintiff's transfer on the basis of Huss's representations. *See id.* Thus, the proposed second amended complaint states a plausible claim for retaliation against Huss, but not the four proposed defendants.

Huss's arguments in response are not persuasive. First, Huss argues that the proposed second amended complaint is brought in bad faith in order to disqualify attorneys from the Colorado Attorney General's Office and thus should not be granted. *See* Docket No. 60 at 4-5. However, given that the first amended complaint already included a retaliation claim against Huss, the Court does not perceive why allowing plaintiff to proceed with the proposed second amended complaint would result in prejudice to Huss. *See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1487 (3d ed. Aug. 2019 update) (noting that "if the court is persuaded that no prejudice will accrue, the amendment should be allowed"). Second, Huss suggests that plaintiff must exhaust his administrative remedies before filing the retaliation claim against him. *See* Docket No. 60 at 6. The exhaustion bar does not apply where, as here, the plaintiff's action does not relate to prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Moreover, Huss fails to identify what, if any, administrative remedies are available to plaintiff that would allow him to resolve his claim, and has thus not shown that he is entitled to dismissal for failure to exhaust administrative remedies. Finally,

10

Huss contends that he is entitled to prosecutorial immunity on the basis of "representation of state officials in this case, or other cases." *See* Docket No. 60 at 8. However, Huss's response fails to explain in what way his allegedly retaliatory acts were taken in the course of representation of state officials. See *Collins v. Daniels*, 916 F.3d 1302, 1315 (10th Cir. 2019) ("The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." (quoting *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993))); *see also Benavidez v. Howard*, 931 F.3d 1225, 1231-32 (10th Cir. 2019) ("A government attorney's administrative duties and those investigatory functions that do not closely relate to an advocate's preparation for judicial proceedings are not entitled to absolute immunity."). Thus, the Court finds that the proposed second amended complaint states a valid claim for retaliation against Huss only.

### b. Access to Courts

Plaintiff asserts that defendants' "false testimony," "hiding [] electronic communications," and "asserti[ng] [] attorney client privilege" violated his right to access the courts. Docket No. 53-1 at 16-17.

"Decisions of [the Supreme] Court have grounded the right of access to courts in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses." *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002). Unlike the typical prisoner access-to-courts claim, which relates to complaints that prison officials denied an inmate a "reasonably adequate opportunity" to present his

legal claims, *see Petrick v. Maynard*, 11 F.3d 991, 994 (10th Cir. 1993), plaintiff's claim is that defendants engaged in a cover-up of previous misdeeds. This is a "backwards looking" access to the courts claim, where a plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) because past official action caused the loss or inadequate settlement of a meritorious case," thus "render[ing] hollow the plaintiff's right to seek redress." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208 (10th Cir. 2004) (quoting *Christopher*, 536 U.S. at 413-14). "[A]n element of any backwards looking claim is for the complaint to 'identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought.'" *Id.*

The proposed second amended complaint appears to assert that Ruiz, Tolleson, and Allen's claim of attorney-client privilege over emails during discovery in the *Tiona* matter hindered plaintiff's ability to construct a claim. *See* Docket No. 53-1 at 20. But even assuming a claim of attorney-client privilege could somehow constitute a hindrance of court access, the allegations do not contain additional facts to explain how the emails would support plaintiff's efforts to construct a non-frivolous claim, or even what non-frivolous claim he would attempt to construct with these emails. *See id.* at 12, ¶ 32. The proposed second amended complaint makes no concrete allegations of the contents of these emails, which ultimately might be protected by the attorney-client privilege. *Id.* Plaintiff asserts that the defendants, in preparation for the July 31, 2018 hearing in *Tiona*, concocted a plan to lie to the court about Huss' conversation with Kirby wherein Kirby was instructed to scuttle plaintiff's S Code change and transfer request. *See id.* at 13, ¶¶ 35-36. He further claims that, in order to cover up this

conversation, Ruiz, Tolleson, and Allen asserted attorney-client privilege over the email. *Id.* The entirety of plaintiff's allegations regarding these materials is based on speculation without any supporting facts. *Id.* at 11-12, ¶¶ 24-32. Plaintiff learned of Huss' alleged attempts to scuttle the S Code change and transfer from an unnamed state employee. *Id.* at 11, ¶ 24. Plaintiff's assertion that Ruiz, Tolleson, and Allen attempted to cover up this alleged Huss-Kirby communication is based on his own surmise regarding the reason for Huss' testimony contradicting the information from the unnamed state employee. *See id.* at 11-13, ¶¶ 24-36. The allegations are conclusory and insufficient to support a claim. Although plaintiff asserts that "[r]etaliation . . . is also an access to court violation," the Court has found no authority supporting this proposition. Thus, allowing this amendment would be futile.

### 2. Claim Two – Conspiracy to Deprive Civil Right and Failure to Report Conspiracy[3]

In Claim Two, plaintiff seeks to add a claim for defendants' failure to report two conspiracies—one between Huss and Jennifer Huss to deprive him of his civil right to access the courts, and a second between Huss, Ruiz, Kirby, Tolleson, and Allen to deprive him of his civil rights. Docket No. 53-1 at 17-19.

---

[3] This is plaintiff's second attempt at bringing a conspiracy claim pursuant to 42 U.S.C. § 1985 in this matter. *See* Docket No. 12-1 at 30-32; *see also* Docket No. 27 at 6-7 (recommending plaintiff's proposed conspiracy claim against Huss and "One Unknown Attorney" be denied as "legally frivolous") and Docket No. 31 at 1-2 (accepting the Magistrate Judge's recommendation to reject plaintiff's proposed conspiracy claim). In both the first proposed amended complaint and this proposed second amended complaint, plaintiff has failed to specify which subsection of § 1985 he alleges was violated. *Compare* Docket No. 12-1 at 30-32, *with* Docket No. 53-1 at 17-19.

Although plaintiff does not specify under which statute he brings the Second Claim, he asserts jurisdiction under 42 U.S.C. §§ 1985 and 1986.[4] Docket No. 53-1 at 7. These statutes provide a cause of action for conspiracy to interfere with civil rights and neglecting to prevent conspiracy, respectively. *See* 42 U.S.C. §§ 1985 and 1986. Plaintiff characterizes his Second Claim as "failure to report or do anything about, and actual conspiracy to deprive plaintiff of a civil right." Docket No. 53-1 at 17. The Court construes the Second Claim as two separate claims, a claim for conspiracy to interfere with civil rights under § 1985 and a claim for neglecting to prevent conspiracy brought under § 1986. *See* Docket No. 53-1 at 17-19.

### a. *Conspiracy (42 U.S.C. § 1985)*

Section 1985 provides two causes of action. Subsection (2) provides a cause of action to a plaintiff injured by a conspiracy to "deter, by force, intimidation, or threat, any party or witness" from attending or testifying in court or to obstruct justice with the intent to deny equal protection of the laws. *See* 42 U.S.C. § 1985(2). Subsection (3) provides a cause of action for a plaintiff injured by a conspiracy to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *See* 42 U.S.C. § 1985(3); *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-269 (1993). Importantly, both sections apply only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously

---

[4] Sections 1985 and 1986 do not provide independent jurisdiction. *See Giles v. Equal Employment Opportunity Commission*, 520 F. Supp. 1198, 1199 (E.D. Mo. 1981) ("These provisions do not grant jurisdiction; they merely provide a remedy in cases in which jurisdiction is present pursuant to 28 U.S.C. § 1343.").

discriminatory animus." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-102 (1971)).

The Court construes the proposed second amended complaint as alleging two conspiracies under § 1985. *See* Docket No. 53-1 at 12-13, ¶¶ 31-37, and at 16-19. The first conspiracy is between Huss and Jennifer Huss whereby they "together chose and agreed to withhold from the court and Plaintiff the facts regarding [Jennifer Huss'] communications with Defendant Kirby [about plaintiff], and entered into that agreement . . . to prevent plaintiff from access to courts in a civil action against [Jennifer Huss] . . . ." *Id.* at 17-18. The second conspiracy is between Huss, Ruiz, Tolleson, Allen, and Kirby to "not tell the truth" to the Court and to "hide the evidence which proved" that Huss had conversations with Kirby between January 16 and 19, 2018 in order to prevent plaintiff's S Code change and transfer. *Id.* at 18.

The proposed second amended complaint is futile because it makes no allegation that racial or class-based discriminatory animus motivated these alleged conspiracies. Preventing plaintiff from suing Jennifer Huss is the alleged motivation for the first conspiracy. *See* Docket No. 53-1 at 18. The motivation for the second conspiracy was to have a "favorable resolution" of pending cases plaintiff filed in this district. *Id.* Thus, the problem with plaintiff's proposed claim is not that it fails to make allegations regarding motivation; rather, it is that the proposed amendments allege

15

motives that are not subject to a § 1985 claim.[5]  Absent such allegations, the proposed amendments are futile.

### b.  *Neglect to Prevent Conspiracy (42 U.S.C. § 1986)*

A cause of action for neglect to prevent conspiracy under § 1986 is premised on a violation of § 1985.  *See* 42 U.S.C. § 1986 (requiring knowledge of conspiracy under § 1985).  Because plaintiff has insufficiently alleged a viable § 1985 claim, his § 1986 claim necessarily fails as a matter of law.  *Hahn v. Sargent*, 523 F.2d 461, 469-70 (1st Cir. 1975); *see Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992); *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985).  Therefore, to the extent the proposed amendments seek to include a § 1986 claim, the amendments are futile.

### 3.    Claim Three – Sixth Amendment Right to Counsel

In Claim Three, plaintiff seeks to add a Sixth Amendment right to counsel claim against Tolleson for her conduct during plaintiff's deposition in the *Tiona* matter.  Docket No. 53-1 at 14, ¶¶ 41-42.  Specifically, plaintiff alleges Tolleson was "interrogating Plaintiff about criminal histories and aliases without first seeking permission from counsel on those cases" and making "threats of monetary and civil damages to Plaintiff."  Docket No. 53-1 at 13, ¶¶ 41-42, and at 19-20.  Additionally, plaintiff alleges Tolleson and Ruiz violated the Sixth Amendment when they made discovery requests seeking the same information.  *Id.*

---

[5] Indeed, the proposed second amended complaint makes no reference to the race of any party or that plaintiff is a member of a protected class, let alone racial or class-based animus.  *See generally id.*

The proposed claim appears to misconstrue the protections afforded by the Sixth Amendment. The Sixth Amendment right to counsel refers to the right to effective assistance of counsel during critical stages of *criminal* prosecution — specifically, after a criminal defendant has been charged. *See Michigan v. Harvey*, 494 U.S. 344, 348-49 (1990). Outside of criminal prosecution, the Supreme Court has recognized the Sixth Amendment's application only in civil contempt proceedings, among a limited number of other circumstances. *See Turner v. Rogers*, 564 U.S. 431, 432 (2011) ("[T]he Court previously had found a right to counsel '*only*' in cases involving incarceration, not that a right to counsel exists in *all* such cases.").

Plaintiff appears to assert he had a right to counsel during his deposition in the *Tiona* matter, a civil action brought under 42 U.S.C. § 1983. Docket No. 53-1 at 19-20. That is not the case. *See Ryan v. Corrs. Corp. of Am.*, 715 F. App'x 831, 834 (10th Cir. 2017) (unpublished) ("But as a civil litigant, [plaintiff] has no Sixth Amendment right to counsel."). The Sixth Amendment does not afford plaintiff the right to counsel during his deposition or in answering interrogatories in any civil action. *Id.* This is true even where counsel questions plaintiff about his past crimes. Therefore, plaintiff's proposed Claim Three would be subject to dismissal for failure to state a claim. Thus, the proposed amendment to add this claim is futile.

### 4. *Claim Four – Violation of Access to Court and Due Process*

In Claim Four, plaintiff seeks to add a "violation of access to court and due process" claim against Ruiz, Tolleson, and Allen for not disclosing "evidence of crime, misconduct or conspiracy to the Court." Docket No. 53-1 at 20. Plaintiff appears to

allege, in short, that when Ruiz, Tolleson, and Allen claimed privilege over the contents of emails pertinent to the *Tiona* matter, they violated the Due Process Clauses of the Fifth and Fourteenth Amendments. This claim is functionally identical to the access-to-courts claim brought in plaintiff's proposed Claim One and is futile for the same reasons. *See Harbury*, 536 U.S. at 415 n.12.

Because the proposed second amended complaint states a plausible claim for relief on a theory of First Amendment retaliation against Huss, the Court will grant the Motion to Amend in part. The remainder of the Motion to Amend is denied on the basis that, because the other claims plaintiff seeks to amend fail to state a claim upon which relief may be granted, amendment of the complaint would be futile.

### B. Motion to Dismiss

As plaintiff has been given leave to file the proposed second amended complaint in part, the Motion to Dismiss filed by Huss is directed to an inoperative, superseded pleading. *See, e.g., Gilles v. United States*, 906 F.2d 1386, 1389 (10th Cir. 1990) ("a pleading that has been amended under Rule 15(a) supersedes the pleading it modifies") (internal quotation marks omitted). As such, the Motion to Dismiss is moot.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Leave to Amend Complaint [Docket No. 53] is **GRANTED IN PART and DENIED IN PART**. It is further

**ORDERED** that plaintiff is ordered to file a new version of the Amended Complaint [Docket No. 53-1], omitting the claims excluded by this order and not

18

including additional material regarding the claim for First Amendment retaliation against defendant Robert Huss. It is further

**ORDERED** that defendant's Motion to Dismiss [Docket No. 36] is **DENIED AS MOOT**.

DATED September 24, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge