IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00303-PAB-SKC

DELMART E.J.M. VREELAND, II,

Plaintiff,

v.

ROBERT CHARLES HUSS,

Defendant.

---

## ORDER

---

This matter comes before the Court on the Report and Recommendation of

Magistrate Judge S. Kato Crews Re: Defendant's Motion to Dismiss [Docket No. 181].

The magistrate judge recommends granting in part and denying in part defendant's

motion to dismiss [Docket No. 133]. Defendant filed an objection. Docket No. 185.

Plaintiff filed a response to defendant's objection. Docket No. 189.

## I. BACKGROUND

### A. Factual Background[1]

This matter arises out of defendant Robert Huss's alleged conduct after a

settlement conference in *Vreeland v. Tiona, et al.*, 17-cv-01580-PAB-SKC ("*Tiona*").

Docket No. 120 at 14. At all relevant times, Huss was an attorney with the Colorado

---

[1] These facts are drawn from the plaintiff's second amended complaint and are
presumed true for the purpose of ruling on defendant's objection. Docket No. 120. The
Court lists only the background from the second amended complaint that is relevant to
resolving defendant's objection to the magistrate judge's recommendation on the
motion to dismiss.

Attorney General's Office.  *Id.* at 4.  He represented a defendant in another of plaintiff's federal court matters, as described more fully below.

Plaintiff is a state prisoner in the custody of the Colorado Department of Corrections ("CDOC").  Docket No. 120 at 6, ¶ 1.  Upon arrival at the CDOC, plaintiff received an offense-specific evaluation ("OSE") that contained errors.  *Id.* at 7, ¶¶ 7-8.  The CDOC relied on this incorrect OSE in assigning plaintiff an S Code classification of S-5-I.  *Id.* at 6, ¶¶ 4-5.  The S-5-I classification required plaintiff fo be evaluated for a possible sex offender treatment and monitoring program, which was an "alleged[ly] mandatory" program in order for plaintiff to be transferred to a lower level facility.  *Id.*, ¶ 5.  Additionally, plaintiff's sentence calculation was improper and he was not awarded the good time credit he was due under Colorado law.  *Id.* at 7, ¶ 8.

In 2016, the CDOC inspector general office ("IGO")  entered into discussions with plaintiff to transfer him to a lower level facility, but his OSE and S Code would have to be corrected in order for him to transfer to a lower facility.  *Id.*, ¶¶ 10-11.  Plaintiff and an investigator at the IGO agreed that the investigator would contact CDOC officials to attempt to correct the information in plaintiff's OSE, S Code, and sentencing calculation and then transfer plaintiff to either a level two or level one facility.  *Id.* at 8, ¶ 12.  The investigator and the director of the sex offender treatment and monitoring program agreed that plaintiff would be required to pay for the new OSE, and, if it showed that plaintiff was non-violent and did not need to participate in the sex offender treatment and monitoring program, the director of the program would correct his S Code from S-5-I to S-5-L, with the "L" standing for "low risk."  *Id.*, ¶ 13.  Plaintiff retained the evaluator

for the OSE.  *Id*., ¶ 15.

After this agreement had been reached, Magistrate Judge Kathleen M. Tafoya set a telephonic settlement conference in *Tiona* for January 16, 2018.  *Id.*, ¶¶ 16-17. Plaintiff, the IGO investigator who was assisting plaintiff to change his S Code classification, Assistant Colorado Attorney General Kristin Ruiz ("Ruiz") (appearing for defendant in *Tiona*), and Huss[2] were on the phone conference.  *Id.*, ¶ 18.  During the conference, plaintiff offered to dismiss his claims against all CDOC defendants in *Tiona* and other matters plaintiff brought against the CDOC if Ruiz would help "speed up a transfer to the lower level facility that was already in progress."  *Id.*, ¶ 19.  Plaintiff's offer to settle did not extend to his claims in *Vreeland v. Schwartz*, No. 13-cv-03515-PAB-KMT ("*Schwartz*"), a matter in which certain defendants were represented by Huss.  *See id.*  At the end of the call, the presumption was that Ruiz would pass along the offer to her client, the CDOC.  *Id.*, ¶ 23.  Huss never spoke during the settlement conference.  *Id.*, ¶ 21.

Three days later, a "State employee" informed plaintiff that Huss sent emails and made phone calls to prevent the settlement from taking place, "to prevent the actual lower level facility transfer that was already in process, from taking place at all," and to try and have plaintiff moved out of the state in retaliation for plaintiff's unwillingness to settle *Schwartz*.  *Id.* at 10, 14, ¶ 24.  As a result of Huss's actions, CDOC staff stopped assisting plaintiff in his facility transfer and blocked the transfer "even on a date when

---

[2] Huss entered an appearance on behalf of the CDOC in *Tiona*.  Docket No. 120 at 6, ¶ 3.  Though not stated in the second amended complaint, the Court notes as background that, on May 21, 2018, Judge Tafoya granted Huss's motion to withdraw as counsel of record.  No. 17-cv-01580-PAB-SKC, Docket No. 141.

Plaintiff ha[d] a right to transfer there as a matter of CDOC policy." *Id.* at 12, ¶ 38.  On February 7, 2018, plaintiff filed this case.  *See* Docket No. 1.

On January 24, 2018, plaintiff filed a motion for sanctions in *Tiona*.  Docket No. 120 at 10, ¶ 25.  Judge Tafoya held a hearing on the motion on July 31, 2018.  *Id.* at 11, ¶ 30.  Plaintiff alleges that, during the July 31 hearing, Huss testified "that he withheld evidence and information from Plaintiff, and the Court." *Id.*, ¶ 33.  Plaintiff attempted to bring a claim that this conduct violated his right to access the courts.  *Id.* at 15, ¶ (ii)(a).

### B.  Procedural History

Plaintiff filed his Prisoner Complaint [Docket No. 1] on February 7, 2018 against Huss in his individual and official capacities asserting a First Amendment retaliation claim and a claim for deprivation of access to court.  Docket No. 1 at 4-14.  Senior Judge Lewis T. Babcock dismissed plaintiff's official capacity claims for damages.  *See* Docket No. 5.

On April 26, 2018, plaintiff sought to amend his complaint to state additional claims.  *See* Docket No. 12, Docket No. 12-1.  After the defendants moved to dismiss the amended complaint, the Court dismissed all claims, without prejudice, except plaintiff's First Amended retaliation claim against Huss.  Docket No. 31 at 2-3.  On August 6, 2018, Magistrate Judge S. Kato Crews was assigned to this case.  Docket No. 29.  On September 10, 2018, Huss filed a motion to dismiss, Docket No. 36, seeking dismissal of the only remaining claim against him.  On July 1, 2019, plaintiff filed a motion for leave to amend the complaint.  Docket No. 53.

4

On September 24, 2019, the Court granted in part plaintiff's motion to amend and denied as moot defendant's motion to dismiss.  Docket No. 71 at 18-19.  The Court granted plaintiff leave to amend the factual allegations in his First Amendment retaliation claim against defendant Huss, but denied plaintiff leave to assert any other claims.  *Id.* at 11, 18-19.  The Court ordered plaintiff to file a new version of the second amended complaint "omitting the claims excluded by this order and not including additional material regarding the claim for First Amendment retaliation against defendant Robert Huss."  *Id.* at 18-19.  Plaintiff did not do so.  On June 5, 2020, Judge Crews accepted the second amended complaint as the operative complaint as amended by the Court's September 24, 2019 order.  Docket No. 118 at 2.  The Clerk's Office docketed the second amended complaint separately as Docket No. 120.  On July 2, 2020, defendant filed a motion to dismiss.  Docket No. 133.  Plaintiff filed a response, Docket No. 170, and defendant filed a reply.  Docket No. 180.  On February 15, 2021, the magistrate judge issued a recommendation wherein he recommends that the Court grant in part and deny in part defendant's motion to dismiss.  Docket No. 181. Defendant filed a timely objection.  Docket No. 185.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged – but it has not shown – that the pleader is entitled to relief."
*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration
marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving,
"a complaint still must contain either direct or inferential allegations respecting all the
material elements necessary to sustain a recovery under some viable legal theory."
*Bryson,* 534 F.3d at 1286 (alteration marks omitted).

The Court will "determine de novo any part of the magistrate judge's
[recommended] disposition that has been properly objected to."  Fed. R. Civ. P.
72(b)(3).  An objection is proper if it is specific enough to enable the Court "to focus
attention on those issues – factual and legal – that are at the heart of the parties'
dispute."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996).
Defendant has filed a timely and specific objection, Docket No. 185; the Court will
therefore conduct de novo review.

## III.  ANALYSIS

Defendant's motion to dismiss argues that the complaint should be dismissed
because (1) plaintiff fails to state a claim, (2) Huss is entitled to absolute immunity, and
(3) Huss is entitled to qualified immunity.  Docket No. 133.  The magistrate judge
recommends granting defendant's motion to dismiss to find that defendant is entitled to
absolute immunity for advising his client not to settle *Tiona*, but denying defendant's
motion in all other respects.  Docket No. 181 at 16.  Defendant objects.  Docket No.
185.

### A.  Absolute Immunity

The magistrate judge's recommendation finds that absolute immunity does not apply to defendant to the extent the complaint alleges that defendant took steps after the January 16, 2018 *Tiona* settlement conference to prevent plaintiff's in-progress transfer to a lower level facility and assistance with that transfer.[1]  Docket No. 181 at 12. Defendant argues that all of the alleged conduct in the complaint is part of the settlement negotiations and defendant is therefore entitled to absolute immunity on all of his actions.

"An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of immunity."   *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976).  Defendant bears the burden of establishing that he is entitled to absolute immunity.  *Benavidez v. Howard*, 931 F.3d 1225, 1229 (10th Cir. 2019).  The Tenth Circuit has "recognized absolute immunity as extending to 'government lawyers involved in civil proceedings.'"  *Id.* (quoting *Robins v. Volkswagenwerk AG*, 940 F.2d 1369, 1373 n.4 (10th Cir. 1991)).  A court is to examine whether the action of the defendant is within the claimed immunity, not whether the status or office of the defendant confers immunity.  *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1195 (10th Cir. 2010).

> [T]he rule of absolute immunity as applied to government attorneys charged with violating § 1983 may be stated generally as follows: A government attorney's administrative duties and those investigatory functions that do not closely relate to an advocate's preparation for judicial

---

[1] The magistrate judge recommends granting defendant's motion to the extent that defendant is shielded from suit by absolute immunity for his conduct in advising his client not to settle *Tiona*.  Docket No. 181 at 12.  No party has objected to this portion of the recommendation, and the Court accepts it.

> proceedings are not entitled to absolute immunity.  Rather, absolute
> immunity shields those acts undertaken by a government attorney in
> preparation for judicial proceedings and which occur in the course of his
> or her role as an advocate for the government.

*Benavidez*, 931 F.3d at 1231.  Defendant argues that all of his actions were taken in the course of his representation of the state in *Tiona* and *Schwartz* and the *Tiona* settlement negotiations.  Docket No. 185 at 2-3.  The magistrate judge found that Huss had not explained how spreading the word to CDOC officials to stop assistance to plaintiff or preventing his facility transfer were actions taken in the course of representing state officials.  Docket No. 181 at 12.  The Court agrees.

Plaintiff's complaint alleges that Huss engaged in these actions as retaliation for plaintiff's refusal to settle *Schwartz*.  Docket No. 120 at 14.  The complaint does not allege that Huss engaged in these actions in order to pressure plaintiff into settling *Schwartz*.  *See id.*  Huss may have been entitled to absolute immunity if plaintiff had alleged that Huss's actions were an attempt to get better leverage for a settlement in *Tiona*.  *Cf. Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1492 (10th Cir. 1991) (finding state attorneys entitled to absolute immunity on claim that they tried to force plaintiff to give up his medical practice because "these offers were akin to plea bargaining, an activity that is absolutely immune from liability due to its intimate association with the judicial process").  However, that is not how the complaint reads. The complaint alleges that defendant was angry about plaintiff's refusal to settle *Schwartz* and took retaliatory actions unrelated to any attempt to settle *Schwartz* and *Tiona*.  Docket No. 120 at 14.

8

Defendant's argument to the contrary is unpersuasive.  Defendant argues that the complaint "characterizes Mr. Huss's alleged actions as 'an effort to prevent a civil litigation settlement.'"  Docket No. 185 at 2.  Defendant fails to quote the entire sentence in the complaint, however, which states:

> The actions of Defendant R.C. Huss . . . in an effort to prevent a civil litigation settlement *and to prevent an in progress lower level facility transfer*, just because Plaintiff would not agree to settle Vreeland v. Schwartz, et al., 13-CV-03515-PAB-KMT, a case Defendant R.C. Huss was counsel on, with the offered settlement of the Vreeland v. Tiona, et al., 17-CV-01580-PAB-SKC, civil litigation, violated Plaintiff's First Amendment Right to be free from retaliation.

Docket No. 120 at 14 (emphasis added).  Therefore, the Court accepts the magistrate judge's recommendation on this issue and overrules defendant's objection.

### B.  Failure to State a Claim

On September 24, 2019, the Court found that plaintiff's proposed second amended complaint sufficiently alleged a constitutionally protected right of access to the courts, that Huss's communications caused plaintiff to lose a lower level facility transfer that was in progress, and that Huss's actions were substantially motivated by plaintiff's refusal to settle *Schwartz*.  Docket No. 71 at 9.  The magistrate judge relied on this conclusion in recommending that the Court deny defendant's motion to dismiss for failure to state a claim.  Docket No. 181 at 9-10.

Defendant argues that the magistrate judge's reliance on the Court's September 24, 2019 order was in error.  Docket No. 185 at 3.  Defendant's motion to dismiss references a number of "[f]iling, rulings, and hearing transcripts in other cases–particularly the *Tiona* matter," and argues that these documents show that

9

plaintiff's allegations of a prison transfer and S Code change are false.  *Id.* at 4, 6.  The magistrate judge refused to take judicial notice of these documents, concluding that to do so would require him to assess the merits of plaintiff's retaliation claim.  Docket No. 181 at 9.  Defendant claims that this was error and that the Court should take judicial notice of (1) documents filed with the Court after the motion to dismiss, including the Court's own order denying plaintiff's motion for a preliminary injunction, and (2) the filings, rulings, and hearing transcripts in *Tiona* and all documents related to plaintiff's S Code designation because they are central to the complaint and plaintiff referred to them in the complaint.  Docket No. 185 at 4-6.

The propriety of taking judicial notice of documents filed since the motion to dismiss was not before the magistrate judge.  "Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."  *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also Maurer v. Idaho Dep't of Corr.*, 799 F. App'x 612, 614 n.1 (10th Cir. 2020) (unpublished).  The Court declines to take judicial notice of documents that were filed after the motion to dismiss because the issue was not before the magistrate judge.  Similarly, defendant's argument regarding Colorado's statutory scheme, Docket No. 185 at 6, was not raised in the motion to

dismiss, *see* Docket No. 133, and the Court declines to consider it here.[2]   *See Marshall*, 75 F.3d at 1426.

In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the challenged complaint itself, but also attached exhibits and documents incorporated into the complaint by reference.  *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  Defendant argues that plaintiff makes extensive allegations about *Tiona*, specifically the July 31, 2018 hearing on plaintiff's motion for sanctions.  Docket No. 185 at 4.  While the complaint provides details on the sanctions hearing, the Court does not find that these allegations are central to the complaint.  These allegations were relevant to plaintiff's claim for denial of access to the courts, which the Court denied plaintiff leave to add.  Docket No. 71 at 11-13.  The allegations regarding testimony at the hearing are irrelevant to plaintiff's claim that Huss retaliated against him by stopping his transfer to a lower level facility.

Even if the Court found the allegations regarding the *Tiona* hearing central to the complaint, the Court would still decline to take judicial notice of the documents associated with the hearing.  The motion to dismiss cites testimony at the July 31, 2018

---

[2] Defendant cites *Jenner v. Brightwell*, No. 14-cv-00916-RBJ-KMT, 2016 WL 1248663, at *4-5 (D. Colo. Mar. 29, 2016), where the court concluded that allegations that an assistant attorney general engineered an allegedly retaliatory transfer were too speculative to survive a Rule 12(b)(6) motion.  Docket No. 185 at 7.  The court granted the defendant's motion to dismiss because the complaint had not alleged sufficient personal involvement when the only factual allegations were that the defendant had knowledge of the transfer and there was a temporal proximity between the motion to dismiss and the transfer.  *Jenner*, 2016 WL 1248663, at *5.  This case is distinguishable because, here, plaintiff has alleged specific conduct by defendant to prevent his transfer.  *See* Docket No. 120 at 10 (alleging that defendant made phone calls and sent emails to prevent plaintiff's facility transfer).

hearing as evidence that plaintiff cannot state a claim for First Amendment retaliation.

Docket No. 133 at 7-9.  Defendant argues that the testimony shows that

> (a) no transfer was in progress, (b) CDOC knew of no reason to change Vreeland's S-code, (c) there were no communications between Huss and Kirby (or anyone else) of the type described by Vreeland, (d) Huss and Kirby did not instruct any other person not to change Vreeland's S-code, deny Vreeland a transfer to a minimum security prison (Camp George West), or stop Vreeland from seeking early parole[.]

Docket No. 133 at 8.  Defendant also argues that the magistrate judge should have considered documents filed in *Tiona* pertaining to plaintiff's S Code designation.

Docket No. 185 at 5.  A court has discretion to decide whether or not to consider materials attached to a motion to dismiss, even if they have been referenced in the complaint.  *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) ("*GFF Corp*. did not purport to decide whether consideration of materials appended to a motion to dismiss is mandatory or discretionary. . . .  We agree with our sister circuits that if a defendant attaches to a 12(b)(6) motion materials referred to by the plaintiff and central to his claim, the court has discretion to consider such materials.").  Indeed, the caselaw defendant cites states that the court *may* consider a document central to plaintiff's claim and referenced in the complaint.  Docket No. 185 at 4. (citing *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute.")).  Given the discretionary nature of judicial notice, the Court finds no error in the magistrate

judge's decision not to take judicial notice of the contents of the filings, rulings, and hearing transcript in *Tiona*.[3]

Additionally, defendant cites the declaration of Adrienne Jacobsen, the litigation coordinator for CDOC, to prove that defendant had no role in plaintiff's S Code designation or lack of transfer. Docket No. 133 at 7. However, the portion of the second amended complaint that plaintiff has been granted leave to assert does not reference this declaration. *See* Docket No. 120 at 6-14. The Court therefore declines to take judicial notice of it.

Because plaintiff's objection to the magistrate judge's recommendation on failure to state a claim is predicated on the magistrate judge's refusal to take judicial notice of these documents, *see* Docket No. 133 at 6-7, and the Court finds no error in the magistrate judge's decision not to, the Court overrules plaintiff's objection.[4]

---

[3] Defendant asks the Court to take judicial notice of the documents attached to the motion to dismiss. Docket No. 185 at 7. The Court declines to do so. *See Prager*, 180 F.3d at 1189 ("[I]f a defendant attaches to a 12(b)(6) motion materials referred to by the plaintiff and central to his claim, the court has discretion to consider such materials.").

[4] Defendant also objects that the magistrate judge did not consider defendant's argument that plaintiff was not engaged in a constitutionally protected activity and did not suffer an injury that would chill a person of ordinary firmness. Docket No. 185 at 7. The magistrate judge found that plaintiff alleged a constitutional violation. *See* Docket No. 181 at 13. Defendant's motion argues that there is no constitutional right to a settlement agreement and there was no injury because (1) CDOC had no duty to accept plaintiff's settlement offer, (2) plaintiff was not eligible for the reclassification or transfer in question, and (3) defendant had no part in the decision not to settle and thereby not to reclassify or transfer plaintiff. Docket No. 133 at 6. Defendant may be able to prove all of these arguments at a later stage in this case, but, at the motion to dismiss stage, the Court must accept the facts as pled in the complaint. And as pled in the complaint, plaintiff has alleged that defendant caused CDOC to stop a transfer of plaintiff to a lower level facility because plaintiff refused to settle *Schwartz*. Docket No. 120 at 14. This sufficiently alleges the first two elements of a retaliation claim. Therefore, the Court overrules this objection.

**C.  Qualified Immunity**

The magistrate judge found that defendant was not entitled to qualified immunity. Docket No. 181 at 16.  Defendant objects.  Docket No. 185 at 7.  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  A court should resolve questions of qualified immunity at the earliest possible stage of litigation.  *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987).  However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard.  *Currier v. Doran,* 242 F.3d 905, 916-17 (10th Cir. 2001).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'"  *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v. Oklahoma ex rel. Dep't of Human Servs*., 519 F.3d 1242, 1249 (10th Cir. 2008)).  When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal

14

constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236.

The magistrate judge found, based on the Court's order granting plaintiff leave to file a second amended complaint, that plaintiff had alleged a constitutional violation. Docket No. 181 at 13.  Defendant objects that, because the documents defendant references in the motion to dismiss contradict the complaint, the allegations are not well pled.  Docket No. 185 at 8.  In section III.B, the Court declined to take judicial notice of these documents.  The Court therefore overrules this objection.

Plaintiff alleges that, three days after the January 16, 2018 settlement conference, defendant

> began making telephone calls and sending emails in order to prevent the offered settlement from taking place, and to prevent the actual lower level facility transfer that was already in process, from taking place at all, and to try and get the Plaintiff, if possible, transferred outside the State of Colorado to a different state prison system.  Plaintiff was also informed that Defendant R.C. Huss had knowingly and intentionally made false assertions against the I.G. Office Investigator (RD) to make it appear as if RD had engaged in misconduct by assisting plaintiff, and finally, it was said that Defendant R.C. Huss was trying to get Plaintiff moved as fast as possible to stop any further held to Plaintiff from the investigator.

Docket No. 120 at 10, ¶ 24.  Plaintiff further alleges that, due to these actions, "all CDOC staff have stopped the assistance to Plaintiff to transfer him to a level one or two

facility, and have caused a block to said transfer even on a date when plaintiff has a right to transfer there as a matter of CDOC policy." *Id.* at 12, ¶ 38.

The magistrate judge found that the right to be free of retaliatory interference with a prison facility transfer for exercising the first amendment right of refusing to settle a lawsuit was clearly established. *See* Docket No. 181 at 16. Although the magistrate judge did not identify a Tenth Circuit or Supreme Court case specifically on point, the magistrate judge held that "[i]t should have been clear to any reasonable official, particularly a licensed attorney representing state officials, that scuttling an inmate's in-progress facility transfer in retaliation for the inmate's decision to continue to pursue his lawsuit, violates that inmate's First Amendment right to access the courts." *Id.* Defendant objects that (1) plaintiff's allegations put his reclassification and transfer proceeding at issue, and (2) plaintiff cannot demonstrate that he has a clearly established right to be free from interference in an ongoing transfer and reclassification proceeding when he put those proceedings at issue in a settlement. Docket No. 185 at 9.

In *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002), the Supreme Court stated that the law is clearly established if it gives an official "fair notice" or "fair warning" that "his conduct deprived his victim of a constitutional right." To show clearly established law, the *Hope* Court did not require earlier cases with "fundamentally similar" facts, noting that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* at 741. However, the Tenth Circuit has noted that *Hope* "appears to have fallen out of favor, yielding to more robust qualified immunity."

*N.E.L. v. Douglas Cnty.*, 740 F. App'x 920, 928 n.18 (10th Cir. 2018) (unpublished) (citing *Aldaba v. Pickens*, 844 F.3d 870, 874 n.1 (10th Cir. 2016) and *Mullenix v. Luna*, 136 S. Ct. 305, 308, 312 (2015)); *but see Ullery v. Bradley*, 949 F.3d 1282, 1291-92 (10th Cir. 2020) (citing *Hope*, 536 U.S. at 741 and stating that right can be clearly established in the absence of binding authority with materially similar facts when the official's conduct is "so egregious" that even a general precedent applies with obvious clarity).

The Tenth Circuit has recognized that, "[e]ven when no precedent involves facts 'materially similar' to ours, the right can be clearly established if a precedent applies with 'obvious clarity.'" *Lowe v. Raemisch*, 864 F.3d 1205, 1210 (10th Cir. 2017). "When the public official's conduct is egregious, even a general precedent would apply with obvious clarity." *Id.* (citing *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377 (2009)). The conduct may be so obviously unlawful that it does not require a detailed explanation and happens so rarely that a case on point is unusual. *Id.* The Tenth Circuit has described these principles as a "sliding scale"; however, in *Lowe*, the Tenth Circuit stated that the "sliding-scale approach may arguably conflict with recent Supreme Court precedent on qualified immunity" because this approach may allow the court to "find a clearly established right even when a precedent is neither on point nor obviously applicable." *Id.* at 1211 n.10. The *Lowe* court declined to decide whether the sliding-scale approach conflicts with Supreme Court precedent. *Id.* Ultimately, the inquiry is whether the legality of the conduct is "beyond debate." *Knopf v. Williams*, 884 F.3d 939, 949 (10th Cir. 2018) (quoting *Mullenix*, 136 S. Ct at 308); *see also Lowe*, 864

F.3d at 1211 ("Ultimately, we consider whether our precedents render the legality of the conduct undebatable.").

Since *Lowe*, the Tenth Circuit has continued to decline to decide whether the sliding-scale approach is still good law in light of Supreme Court precedent, but the approach has come up in Tenth Circuit cases.  *See Nosewicz v. Janosko*, 754 F. App'x 725, 733 n.8 (10th Cir. 2018) (unpublished) (noting that the sliding-scale approach has been called into doubt, assuming without deciding the approach applied because neither party argued otherwise, but finding reversal was warranted even if it did not apply); *Knopf*, 884 F.3d at 950 n.10 (stating that the sliding-scale approach gave the most support to the dissent's approach, but that, even under that approach, it was not obvious that the alleged conduct violated clearly established law); *Harris v. Mahr*, 830 F. App'x 339, 343-44 (10th Cir. 2020) (unpublished) (not discussing the continued validity of the sliding-scale approach, finding constitutional principles surrounding failure to intervene in an unlawful search not clearly established, and defendant's actions "not the type of 'egregious' conduct that warrants foregoing our traditional requirement of an on-point case"); *Contreras ex rel. A.L. v. Dona Ana Cnty. Bd. of Cnty. Comm'rs*, 965 F.3d 1114, 1123 (10th Cir. 2020) (per curiam) (Carson, J., concurring in part and concurring in judgment) (stating that sliding-scale approach "lives in this Circuit" because no case has overruled it); *Easter v. Cramer*, 785 F. App'x 602, 607 (10th Cir. 2019) (unpublished) ("[W]hen addressing claims of excessive force, we apply a sliding scale in which the more obviously egregious the conduct in light of prevailing constitutional

principles, the less specificity is required from prior case law to clearly establish the violation." (internal quotations and alterations omitted)).

While the sliding-scale approach "may arguably conflict" with Supreme Court precedent, *Lowe*, 864 F.3d at 1211 n.10, the Tenth Circuit has not overruled it and the Court will therefore use this approach.  *See Contreras*, 965 F.3d at 1135 (Baldock, J., concurring in part and dissenting in part) (stating that the court is bound to apply the sliding-scale approach until either the Tenth Circuit or Supreme Court "sounds the death knell").

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  "It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts."  *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010)); *see also Frazier v. Dubois*, 922 F.2d 560, 561–62 (10th Cir. 1990) ("[W]hile a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer, prison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution." (internal quotation marks omitted)).

Defendant was an attorney with the Colorado Attorney General's Office who is alleged to have used this position to stop an in-progress facility transfer as retaliation against plaintiff for exercising his right of access to the courts by refusing to settle a

lawsuit.  Docket No. 120 at 14.  This is a case where "the public official's conduct is [so] egregious, even a general precedent would apply with obvious clarity."  *Lowe*, 864 F.3d at 1210; *see also Ullery*, 949 F.3d at 1291 ("[W]hen a public official's conduct is so egregious even a general precedent applies with 'obvious clarity,' the right can be clearly established notwithstanding the absence of binding authority involving materially similar facts." (quoting *Lowe*, 864 F.3d at 1210)).  The Court finds that the alleged conduct is so egregious that even the "general principle[s]" forbidding retaliatory action for exercising a right of access to the courts apply with "obvious clarity."  *See Lowe*, 864 F.3d at 1210.  The Court has not identified a similar incident, but the Court finds that the law provided "fair warning" that defendant's conduct was unconstitutional, and thus that the right was clearly established.  *See Ullery*, 949 F.3d at 1292 (citing *Hope*, 536 U.S. at 741).  Therefore, the Court overrules defendant's objection.[5]

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Report and Recommendation of Magistrate Judge S. Kato Crews Re: Defendant's Motion to Dismiss [Docket No. 181] is **ACCEPTED**.  It is further

**ORDERED** that Defendant's Objection to Magistrate Judge's Report and Recommendation [Docket No. 185] is **OVERRULED**.  It is further

---

[5] Defendant also argues that, should the Court find that taking judicial notice of documents attached to the motion to dismiss is improper, the Court may grant defendant summary judgment based on the undisputed facts in the record.  Docket No. 181 at 6 n.1.  Fed. R. Civ. P. 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Because plaintiff has not been given an opportunity to present all pertinent material, the Court declines to treat defendant's motion as one for summary judgment.

**ORDERED** that defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [Docket No. 133] is **GRANTED IN PART** and **DENIED IN PART**.  It is further

**ORDERED** that plaintiff's Motion For Enlargement Of Time To Respond To Defendant's 3/1/2021 Objection Which Has Still Not Been Served To Plaintiff By Defendant's Counsel [Docket No. 187] is **DENIED AS MOOT**.


DATED March 29, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge